The next case before us is Gordon v. Monoson, No. 06-1233. Mr. Russell. May it please the Court and good morning. I would like to reserve five minutes for rebuttal purposes if I could. That's granted. You learn. You listen and you learn. I try, Your Honor. Your Honor, my name is Charles Russell. I represent the appellant, Detective David Monoson. And for those points that I do not reach in my oral argument, we would rely on our briefs. Yeah, that's fine because we ask a lot of questions and we sometimes counsel can't get the point, but you haven't waived it. Thank you, Your Honor. This is, as the Court can tell from reading the briefs, an extremely unusual case. It's been extremely protracted, and we recognized that at the outset. But it's been plagued with an incredible number, I would submit, of procedural defects throughout the years. The parties in the briefing appear to agree that the District Court committed error in grafting a timeliness requirement on a Rule 60b-4 motion. As this Court has recognized, and the majority of courts considering the matter, if a judgment is void for lack of due process, it is void on the day it was rendered and is void 100 years from now. So as a matter of logic, there should not be a timeliness requirement. The issue I'd submit before the Court is what is the appropriate remedy under that circumstance? And as we maintain in our briefs, a Rule 60b-4 motion is a different animal than other Rule 60b forms of relief. And that is why this Court should not remand for consideration to the District Court because if it is a void judgment, the District Court has no discretion one way or the other whether to enforce it. Indeed, the proper remedy is for this Court to de novo look at the facts surrounding the issuance of the judgment, and if it is void, to declare it so and remand for a trial on the merits, which is something that Officer Monison effectively never had. But we have something of a leap to get to the merits here. Assuming you're right, and I'm inclined to agree with you, that there is no time limit under B-4, a void judgment does not have a time bar associated with it, and assuming that a judgment can be void as a result of a want of notice of trial, for example, which I believe to be the case. But this is a case where we don't have one 60b-4 motion, but we have two 60b-4 motions, and the first motion relied on the absence of notice of the original trial, and that motion was denied, and no appeal was taken from that denial. If it's true, as you're maintaining, that you can file repeated B-4 motions at any time, then doesn't it follow that there's never a final judgment? A judgment never becomes final, even after it's been litigated, even after the void issue has been litigated and rejected. Your Honor, that is not my position inasmuch as I do not think that a litigant can file repeated 60b-4 motions. But in response, I believe, to your question, it's our position that the first remitter motion, and that's really what that was, did not adequately litigate this due process issue that is before you. What was raised initially was a remitter motion that went on for approximately three pages as to why the damages were too high, and it included at the end three sentences that indicated to the court the defendants were not served with notice for the trial itself. First of all, the myriad of due process issues that I raise before you today include, but certainly are not limited to, that one defect, which was a glaring defect, lack of trial notice. But secondly, it is apparent that Judge McGlynn never passed on the issue. And I say that, and I maintain before Judge Gomez, that if you read Judge McGlynn's order, his sole rationale for denying the remitter motion was because all of the facts raised in that motion had been decided adversely to my client as fact issues by the jury. Now, it is apparent, I would think, that none of the due process issues, lack of trial notice, lack of notice of summary judgment, lack of notice that his government counsel had withdrawn, none of that, those weren't jury issues. Those issues were not decided by the jury. And Judge McGlynn, the best that can be said about his order in that respect is that it is internally ambiguous. Then you should have appealed that. That comes into yet another notice defect, Your Honor, because the record is rather clear that Detective Monison was not given notice that that motion had been decided adversely. Wasn't Francis certain about that at the evidentiary hearing? Initially, he wasn't quite sure, but wasn't he pretty certain about that at the evidentiary hearing, that he did tell them that it was denied? It was equivocal inasmuch as his affidavit that was submitted to the court was, I would say, within a week or so of the trial testimony. And the trial testimony is what it is. And he indicated that he thought he had perhaps, in fact, seen the order. He said he gave him notice. Well, Your Honor, he was quite equivocal as to whether or not he had any conversations with Detective Monison about it. Now, Detective Monison took the stand and was absolutely clear that he had no idea that this had been determined adversely to him. And one of the circumstances that I think the court should consider here is that this is not an ordinary litigant in the sense that Officer Monison is provided counsel by statute, or is supposed to be, as most police officers in most jurisdictions in 1983 suits. He did not freely and voluntarily choose any of the counsel here. And a police officer, I would submit, is entitled to justifiably rely upon government, union officials, others to assist them in handling cases such as this. Well, haven't we also said that he would have had a duty to look into the status of the motion in his case? We've said that in a number of cases, haven't we? You just can't put blinders on and ignore the situation for all these years. Well, Your Honor, there is jurisprudence to that. It has not been briefed, and it was not particularly raised before Judge Gomez. But the fact of the matter is that this was a police officer, and I think that that does take it a bit out of the pail. In other words, that there is some justifiable reliance that that should take place, that a government or that your government is going to take care of you, for lack of a better term. What precedent do you have for that proposition? And aren't police officers, if they're litigants, under the same rules as everybody else? Your Honor, under all 60B jurisprudence, the court is to, if there is a delay, for instance, a failure to meet an appeal deadline, and that was where the question was headed, that the court is to look at all of the circumstances surrounding why that delay occurred. And we cited in our briefs several cases where appellate deadlines that had been missed were waived, and the court did not, for lack of a better term, enforce them against the litigant because of errors made by counsel, errors made in failure to provide notice, and such. This is one of those cases where the failure to provide notice was not limited just to failure to provide notice of a trial date. It preceded all of the pre-trial maneuvering, and it kept on going to the point that he was not provided of notice that he had to file a direct appeal. I will reserve the rest of my time for rebuttal. Thank you.  Good morning, Your Honor. May it please the court, my name is George Marshall Miller, and I appear on behalf of Mr. Ted Roy Gordon. Why did you wait so long to execute on this judgment? Well, for a very practical reason, Your Honor. During the intervening years, Mr. Monison had moved out of the Virgin Islands. He had no assets in the Virgin Islands, and then one day I read in the newspaper that he had returned, had filed a case against the government of the Virgin Islands, had won, and now was the expected recipient of a big chunk of money, whereupon I revitalized his case. The argument of the appellant in his brief is basically in two sections. One is dealing with 60B6 and so-called extraordinary circumstances. I think the court can summarily disregard that, because it's unimaginable that Judge Gomez could be deemed to be abusing his discretion in denying the motion based on exceptional circumstances 17 years later. In his decision, Judge Gomez cites a variety of cases where much lesser times were deemed unreasonable. The guts of the appeal, in my view, Your Honor, deals with 60B4, and there is authority to the effect that a void judgment is not subject to a time limit, and there's also authority going the other way. Specifically, this court in Hodge v. Hodge at 61 F. Second 590 found that an eight-year delay in seeking Rule 60B4 relief was unreasonable. The court stated, quote, greater weight to finality. What did the court do? Did they apply a reasonable time to the void judgment claim, or did they merely find that no valid excuses had been given, no valid reasons? In Hodge, Your Honor? In this case or in Hodge? In this case. Yeah, I'm talking about this case. In this case, Judge Gomez ruled that Mr. Monison was, in fact, represented at trial by counsel, that Mr. Monison, in fact, filed a post-trial 60B motion, actually a joint motion or combined motion, remediator and relief from judgment. And obviously, as Your Honors have pointed out this morning, the denial of that motion was not appealed. So to answer your question, I believe Judge Gomez' ruling was that Mr. Monison's excuses were insufficient. Not that he didn't adopt a flat rule as a matter of law that 70 years was unreasonable. There's no excuse given. I think you said both, Your Honor. The failure to file an appeal from Judge McGlynn's ruling, I think, is fatal to the appeal in this case, Your Honor. Could I just ask you, had previous correspondence been sent to the VI Police Department, and had that been picked up by the defendant? I believe so, Your Honor. At the December 2005 hearing before Judge Gomez, attorney Victor Schneider, who was Mr. Monison's previous attorney, testified, and I'm referring to page 32 of the joint appendix, with a quote, With a case such as this, where the government had been joined, and for whatever reasons we were out of the case, we would certainly advise the government employee, in this case the police officer, we would have advised him as to the disposition, as to what had happened, and we would have either provided him or his lawyer with copies of the documents in the file. An exhibit was introduced before Judge Gomez, which attorney Schneider identified as a letter he sent to attorney Monison. He indicated that the address on the letter was the address that his office had been using throughout the litigation. That's to send it to the police department? Is that the address that he's talking about? It seems sort of strange to me. I don't know whether they didn't have a home or someplace. Throughout the brief, there's this reference to serving him at the police department, and I think he says that he was no longer with that department or with that office. It depends at what point in time we're talking about, Your Honor. Pre-trial, Detective Monison, or Officer Monison at the time, was employed by the police department. The police department works very closely with the Attorney General's office on a daily basis, and it was routinely followed that the Attorney General's office communicated at the office's job address. And that's what we're talking about, the job address? I believe so, Your Honor. Don't these people have homes? Don't they have residences also? Yes, Your Honor, they have residences. However, during the course of the litigation, from the time the complaint was filed, all through answering interrogatories, all through producing documents, taking Officer Monison's deposition, Officer Berry's deposition, the defendants were always notified by the customary procedure, and it worked. Now, suddenly, on the day before the trial, and mind you, this is not the first trial date, the court had scheduled trial in January of 1988, at which time Mr. Monison did not show up. And the court continued the case because of his absence and set it for, I believe it was June. And once again, he doesn't show up on the morning of jury selection. I think Judge McGlynn was perfectly justified, especially when Mr. Monison's lawyer shows up. Attorney Francis appears and says, Good morning, Your Honor, I'm here to represent Officer Monison. I filed my notice of appearance, and Mr. Monison doesn't seem to be here. Can we put it off? And the judge says no. We did that before. Let's proceed. Are you ready? Attorney Francis says yes, I'm ready, and we go forward. I think aside from that, the fact that if you look at the joint appendix in the hearing before Judge Gomez, my esteemed brother Russell, referring to the first B4 motion, says, The proper, and I quote, The proper and the vehicle to raise it would have been a direct appeal if somebody had notified Detective Monison or his counsel that a final ruling had been issued. Judge McGlynn's order of January 1989 was never served and never received by either of them. So they did not know an appellate period was available to them or had been triggered. And then if you look at the statement of Attorney Francis later on in that same hearing, he was asked, in any event, were you aware that he, meaning Judge McGlynn, denied the motion? Answer, yes, I was aware that he denied the motion. Question, and did you inform Mr. Monison that he denied the motion? Answer, I believe I did, yes. Question, what was his reaction or response? Answer, I cannot recall his reaction, but I do believe that I did. So I think that under those circumstances, the allegation that Mr. Bynum That was denied. Monison himself denied it, right? I'm sorry, Your Honor? Didn't Monison deny that, that he received it? Monison denied that he, Monison, didn't receive it. But the point that I'm making is that his lawyer admits that he received it. And counsel for Monison, before Attorney Francis takes a stand, argued that neither Monison nor Francis ever received notice of Judge McGlynn's ruling. Francis refutes that and says that he clearly received it, and he believes that he gave it to his client. What happened to Mr. Berry? He committed suicide, Your Honor. Oh, I meant he's not alive. He's not. There's also law to the effect that the finding of a void judgment is something to be very carefully approached by the court and that it should be narrowly construed. In this instance, we feel that there was notice all along before trial, immediately after trial, also after the ruling of Judge McGlynn. We feel that at no point really was Mr. Monison without counsel or without reason to participate in the litigation. I think the fact is that he only cared about it when he had something to lose. Thank you very much. Thank you. We'll hear from Michael. Thank you. May it please the court. One of the questions that the court asked my esteemed colleague was whether the district court below made findings with respect to whether or not notice was actually given to Detective Monison. I would respond by saying that the court scrupulously avoided making any findings at all in this case regarding notice, in particular the letter, the June 1987 letter that the court discussed. That, as the court observed, was addressed to the Virgin Islands Police Department. Detective Monison testified that he provided very specific contact information to government counsel, but that particular letter never reached him. The letter also is quite curious in that it recited that Judge McGlynn had made rulings, such as permitting government counsel withdrawal. He had not done so. He didn't do that until September, based upon an apparently oral motion, because nobody ever filed anything in the record moving to withdraw as Detective Monison's counsel. What I would suggest that the district court did was seize upon a timeliness standard, applied it to a 60 before motion, which I think the parties concede was erroneous, and avoided, thereby sidestepped, and avoided having to make any findings at all as to whether or not notice had actually been given. So those issues, I would submit, have not been ruled upon before. Attorney Francis, the record, I believe, would belie some of the argument made by my colleague with respect to Mr. Francis' involvement at the last minute and whether he was ready to proceed. We quoted in our brief, and the appendix has his testimony very clear, that he stepped in and was pinch-hitting at the last minute without any ability to present any evidence, any testimony at trial whatsoever. And that is important, I would submit to the court, because this was not a lay-down case for Mr. Gordon. This was a sharply disputed factual event. And the only thing that this court has in the record before it is Officer Monison's adamant testimony that he told everybody in deposition and would have testified at trial that nobody assaulted Mr. Gordon, and that he identified himself as a police officer, and that he was acting under color of territorial law at the time. That, of course, would have provided him with qualified immunity. But because his own counsel filed a summary judgment motion, which was conceded readily and handily by the plaintiff, my client's entire defense case was torpedoed before he ever got to trial, and he wasn't even given notice of that. With respect to whether or not Attorney Francis ever received Judge McGlynn's order, when we first started arguing this case to Judge Gomez, what we had in the record was Attorney Francis's affirmation that he had not received the order. His testimony was, as the court has observed, somewhat different when he was on the witness stand. But the fact of the matter is, as the court also noted, this court has noted, Detective Monison is adamant that he never was given notification by Attorney Francis. Now, should the sins of the lawyer be visited on a client? Typically, there's much case law that it should be in a typical civil litigation context. The seminal case on that is Link v. Wabash Railroad. But as we pointed out in our brief, Link v. Wabash involves the center pin of that is when the lawyer is freely and voluntarily chosen by the client and that the lawyer and client are in an agency relationship. Attorney Francis is clear that he abandoned this case, turned the file back to the union, washed his hands of it months before the opinion came down. But he once told Francis to file a post-trial motion, and he did it. Your Honor, he did. He did. And it did not hit all the points that we are raising before you. Didn't talk at all about the qualified immunity problem or defenses. And Judge McGlynn, from the wording of his order, plainly did not address those arguments. So under this court's precedent regarding issue preclusion, I don't think the court can possibly say these issues have been previously litigated. The argument is, if Mr. Francis's failure to appeal this case, should that be visited on Detective Monison? And I would suggest that under the circumstances of this case, the answer would be no. The court should not be unmindful in this case that there were a myriad of due process violations that would, any number of them would, I suggest, have led the court, if it had considered them, to rule that this was a void judgment. If it was void then, it's void now. And finally, if I may finish my thought? Yes. Thank you, Your Honor. We won't do what we have been told. The Chief Justice of the Supreme Court did stop somebody in the middle of the word the, but go ahead. Thank you. We have raised, and I ask the court to consider, that Mr. Gordon, under the law of the restatement of judgments applicable here, can have no justifiable reliance upon the judgment he's seeking to enforce because he participated in large part in the problems that we had here with regard to the summary judgment motion and the torpedoing of my client's case by his own counsel. I thank the court. Thank you very much. We will take the matter under advisement. We excuse counsel if you need our permission. In accordance with local custom, thank you, Your Honor. Even judges learn. We'll go to the next case on the list.